# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MR. and MS. DOE, individually and as parents and next friends of JOHN DOE, a minor, <br><br> Plaintiffs, <br><br> v. <br><br> PORTLAND PUBLIC SCHOOLS <br><br> Defendant. | ) ) ) ) ) ) ) ) 2:20-cv-00461-JDL ) ) ) ) ) |

## ORDER ON PLAINTIFFS' MOTION TO ENFORCE MAINTENANCE OF PLACEMENT

On December 9, 2020, Plaintiffs Mr. and Ms. Doe (together, "the Does"), individually and as parents and next friends of their son John Doe ("John"), a minor, filed a Complaint against Defendant Portland Public Schools ("Portland"), which is the local education agency responsible for providing John with a Free Appropriate Public Education ("FAPE").[1] The Does seek damages for discrimination claims under the Americans With Disabilities Act, 42 U.S.C.A. §§ 12131-12134, and the Rehabilitation Act, 29 U.S.C.A. § 794; attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 *et seq.*, as supplemented by the State of Maine's corresponding laws regarding the education of exceptional students, 20-A M.R.S.A. § 7001, *et seq.*; and judicial review of one aspect of an administrative decision issued by a Maine Department of Education hearing officer pursuant to the IDEA, 20 U.S.C.A. § 1415(i)(2).

---

[1] On December 14, 2020, United States Magistrate Judge John C. Nivison granted a motion by the Plaintiffs to proceed under the aliases "Mr. and Ms. Doe" and "John Doe" in place of their true names.

Pursuant to the maintenance of placement, or "stay put," provision of the IDEA, 20 U.S.C.A. § 1415(j), the Does now move this Court to order Portland to fund the maintenance of John's private education at the Aucocisco School ("Aucocisco") during the pendency of these judicial proceedings (ECF No. 15). A hearing was held on the Does' motion on May 6, 2021. For the reasons that follow, I grant the motion.

## I. FACTUAL BACKGROUND

John is a child with a learning disability who lives with his parents, the Does, in Portland. Accordingly, Portland is the local education agency responsible for providing John with what is known in the vernacular as a FAPE—a free and appropriate public education.[2] John attended the East End Community School ("EECS") in Portland from kindergarten through his third-grade year.

John has struggled with his reading and writings skills since kindergarten. Despite his mother formally expressing concerns about her son's reading and writing progress multiple times, beginning at the end of kindergarten, John was not referred for an evaluation to determine if he qualified as a special education student until the start of his second-grade school year. In December 2017, partway through that school year, a Portland Individualized Education Program ("IEP") team found John ineligible for special education services, concluding instead that John should receive

---

[2] The IDEA requires public schools to provide a FAPE to students with disabilities. 20 U.S.C.A. § 1412(a)(1)(A). "A FAPE encompasses special education and support services provided free of charge. A school system has met this obligation as long as the program that it offers to a disabled student is 'reasonably calculated' to deliver 'educational benefits.'" *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008) (internal citation omitted).

"response to intervention" supports to see if they would resolve John's reading and writing difficulties.

During John's third-grade school year, the Does brought John to Aucocisco—a non-profit, state-approved special purpose school for students with disabilities—for an evaluation. The Aucocisco evaluator determined that John has dyslexia, which causes him to struggle with both phonological and orthographic processing. The Aucocisco evaluator recommended that John receive reading intervention targeting both his phonological and orthographic deficits using the "Lindamood-Bell Seeing Stars" instructional program. Because John was not receiving special education targeted toward his dyslexia at EECS, the Does unilaterally placed John at Aucocisco for "Seeing Stars" tutorials for a portion of each school day beginning in May 2019. John responded positively to the tutorials, and his reading levels improved.

At the beginning of John's fourth-grade school year, the Does enrolled John at the Breakwater School, a private school in Portland, which offers smaller classes and more individualized attention than EECS, but which does not offer special education services. They also personally hired a former Aucocisco tutor to provide John with supplemental "Seeing Stars" instruction twice a week. In October 2019, a Portland school psychologist assessed John and diagnosed him with Attention Deficit Hyperactivity Disorder ("ADHD") along with processing deficits in short-term working memory, cognitive efficiency, and number series. In November 2019, Portland held another IEP team meeting, and concluded that John does in fact have a specific learning disability that requires special education and related services through the IDEA.

At the end of 2019, the Does decided to remove John from Breakwater, as they believed that the school could not meet his reading and writing needs. Portland convened an IEP meeting in January 2020 to review its proposed IEP for John. At that meeting, the Does proposed Aucocisco as John's proper placement, but Portland rejected that suggestion. Rather, it proposed that John attend EECS, spend 70% of his time in a regular classroom education environment, and receive special education reading instruction. The proposed IEP did not specify the use of the "Seeing Stars" program or any other specific program. The Does rejected this proposed IEP and instead unilaterally enrolled John at Aucocisco full-time beginning in February 2020, where he currently remains and where he has showed steady progress.

## II. PROCEDURAL BACKGROUND

In early November 2019, the Does filed an IDEA due process complaint seeking reimbursement for the expenses they had incurred for John's Aucocisco tutorials and services. A due process hearing was held at the end of July 2020. The issues agreed upon at the hearing were:

1. Whether [Portland] violated the IDEA's child find[,] referral[,] and identification obligations, and/or denied [John's] right to a [FAPE] by failing to find him eligible for special education and related services from December 2017 to November 2019[?]

2. Whether [Portland]'s January 2020 [IEP] and placement offer failed to provide [John] with a FAPE in light of his individual circumstances[?]

3. Whether [John] is entitled to a compensatory remedy and/or reimbursement to his Parents for services provided to him through Aucocisco . . . from May 2019 through August 2019 (partial day tutorials) and/ or since January 2020 (full day placement), and/or continuing programming and placement at . . . Aucocisco . . . or some other remedy[?]

4

4. Whether [Portland] acted with deliberate indifference in failing to find [John] eligible for special education and related services under the IDEA from December 2017 through November 2019[?]

ECF No. 15-1 at 3-4.

The hearing officer ultimately concluded that Portland had violated the "Child Find"[3] requirement of the IDEA by concluding that he was ineligible for special education. The hearing officer determined that Portland had denied John a FAPE from December 2017 (when he was deemed ineligible for an IEP) through November 2019 (when he was deemed eligible for an IEP). Portland does not challenge this portion of the hearing officer's decision.[4]

However, the hearing officer also found that the January 2020 IEP and proposed placement of John in a public school were appropriate. The hearing officer concluded her decision by ordering:

> As compensatory education for the approximately two-year denial of FAPE, the parents are awarded $74,613.35 in reimbursement of costs expended in educational services to redress the denial of FAPE. Because an appropriate IEP was offered in January 2020, ongoing placement of [John] at Aucocisco is not ordered.

ECF No 15-1 at 73.

In Count IV of the Complaint, the Does challenge the portion of the hearing officer's order concluding that Portland's January 2020 IEP offer would provide John with a FAPE. In the instant motion, the Does ask this Court to order Portland to

---

[3] The "Child Find" provisions of the IDEA requires all school districts to promptly identify, locate, and evaluate all potentially eligible children with disabilities so they can receive the specialized services to which they are entitled. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (citing 20 U.S.C.A. § 1412(a)(3)(A)).

[4] The hearing officer ruled that she did not have jurisdiction to hear issue number 4. ECF No. 15-1 at 4.

fund the maintenance of John's current educational placement at Aucocisco during the pendency of these proceedings.

## III. LEGAL STANDARD

The stay put provision of the IDEA provides that:

> [D]uring the pendency of any proceedings conducted pursuant to this section, *unless the State or local educational agency and the parents otherwise agree*, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C.A. § 1415(j) (emphasis added); *see also* Maine Unified Special Education Regulations ("MUSER"), 05-071 C.M.R. ch. 101, § XVI.20(A). Federal regulations elaborate that "[i]f the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents." 34 C.F.R. § 300.518(d); *see also* MUSER, § XVI.20(D). Courts have recognized that a hearing officer's decision in favor of a change in a child's placement constitutes an agreement by the State. *See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Edu. of Mass.*, 471 U.S. 359, 372 (1985).

"When a school system cannot provide an appropriate education for a disabled student within the public schools, a private placement is an expressly authorized alternative. Costs of the private program, such as tuition and necessary services, are then shouldered by the local school system with financial assistance from the state and federal governments." *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 915 (1st Cir. 1983) (internal citations omitted). Accordingly, "once there is state agreement with

6

respect to pendent placement . . . financial responsibility on the part of the local school district follows." *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 84 (3d Cir. 1996).

## IV. DISCUSSION

The IDEA does not define the phrase "then-current educational placement." The First Circuit has noted that the stay put provision "is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the [IDEA]. The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate." *Verhoeven v. Brunswick Sch. Comm.,* 207 F.3d 1, 10 (1st Cir.1999) (quotation and citation omitted).

"At the same time, *Verhoeven* recognized that the stay put provision includes an exception to the general rule: 'the interim placement during proceedings challenging the child's regular placement shall be the child's current educational placement, unless the . . . educational agency and the parents otherwise agree." *Millay v. Surry Sch. Dep't*, 584 F. Supp. 2d 219, 229–30 (D. Me. 2008) (quoting *Verhoeven*, 207 F.3d at 7–8) (internal quotation omitted). "A stay put inquiry therefore focuses not only on the last agreement between the parties that defines the 'then-current educational placement,' but also on agreements the parties may have entered into to opt out of that placement." *Id.* at 230. As noted above, a hearing officer's decision in favor of a change in a child's placement constitutes an agreement by the parties. *Burlington,* 471 U.S. at 372.

Ultimately, based on the First Circuit's interpretation of the stay put provision in *Verhoeven*, the "then-current educational placement" inquiry and the "otherwise

7

agree" inquiry turn on the same question: what was the last placement that both the parents and the State agreed to be appropriate? The parties disagree as to the answer.

The Does argue that the hearing officer's decision—which ordered reimbursement for the tuition costs that the Does incurred for John at Aucocisco during the two years that he was denied a FAPE, and which publicly funded John's Aucocisco tuition through January 2021—is an agreement by the State that placement at Aucocisco is appropriate. Portland, on the other hand, contends that John's proper stay put placement is at EECS.[5]

It is clear that the last placement that both the Does and the State agreed upon was John's placement at Aucocisco. While the Does did agree to initially place John in a mainstream EECS kindergarten class, they quickly realized that his reading and writing skills were not progressing as they should, and they raised formal concerns about John's progress multiple times beginning at the end of kindergarten. It would be illogical to say that the Does last agreed to a mainstream placement at EECS when, at the time they made that decision, John's learning disability had not yet been diagnosed. Once the Does became aware of John's learning difficulties, they

---

[5] It is unclear whether Portland believes that John should be placed in a fully mainstream EECS classroom, or if he should be placed at EECS with the 2020 IEP in place. In its opposition, Portland notes that "[l]ooking solely at the statutory language of the IDEA, [John's] 'stay put' placement in this case would have had John in a fully mainstream placement at [EECS], because the family and Portland never agreed upon anything else. But courts have recognized that a state hearing officer ruling in favor of a change in the child's placement sought by the parents would itself be an agreement contemplated by 20 U.S.C.A. §§ 1415(j) for a placement other than the normal stay put placement." ECF No. 16 at 4. This statement seems to implicitly recognize that a mainstream placement at EECS is not John's stay put placement. Because at the May 6, 2021 hearing Portland contended that John's proper placement is at EECS, I assume that Portland believes that John should be placed at EECS with the 2020 IEP in place.

8

immediately began advocating for special services, which the hearing officer agreed (in a portion of her decision that Portland does not dispute) were denied in violation of the IDEA.

When John was eventually evaluated for an IEP in December of 2017, he was determined to be ineligible and remained in a fully mainstream classroom. The hearing officer specifically determined that that decision "was unreasonable and resulted in a denial of [John's] right to [a] FAPE." ECF No. 15-1 at 55-56. She therefore concluded that the Does' placement of John at Aucocisco was "proper under the IDEA," and ordered that the Does be reimbursed for John's private placement. *Id.* at 69. In other words, the hearing officer agreed that placing John at Aucocisco while he was being denied a FAPE at EECS was appropriate. While the hearing officer further found that the 2020 IEP provided John with a FAPE, the Does have never agreed to that determination—instead, their disagreement is the subject of this lawsuit.

Portland offers a number of explanations as to why the hearing officer's reimbursement order was not actually an agreement that John's placement at Aucocisco was appropriate. I consider each in turn.

First, at the May 6, 2021 hearing, Portland argued extensively regarding 34 C.F.R § 300.518(d) and its corresponding state regulation, MUSER, § XVI.20(D), which together stand for the proposition that "[i]f the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement *is* appropriate, that placement must be treated as an agreement between the State and the parents." § 300.518(d) (emphasis added); *see also* MUSER, § XVI.20(D). Portland contends that

9

the use of the word "is"—as opposed to "was"—indicates that there must be an agreement as to the child's future placement, and that an agreement that a child's past placement *was* appropriate is not sufficient for purposes of the stay put provision.

I find that, in this instance, the present tense "is" embodies the past tense "was." Section 300.518(d) is based on "the longstanding judicial interpretation of the [IDEA]'s pendency provision that when a hearing officer's decision is in agreement with the parent that a change in placement is appropriate, that decision constitutes an agreement by the State agency and the parent for purposes of determining the child's current placement during subsequent appeals." 71 Fed. Reg. 156, at 46710 (Aug. 14, 2006). In the situation that courts more frequently encounter—where a hearing officer has ordered reimbursement for both the parent's past expenditures and the expenses of the student's private placement going forward—the hearing officer's decision that the past private placement *was* appropriate is indistinguishable from the determination that the placement *is* appropriate going forward. *See Millay v. Surry Sch. Dep't*, 584 F. Supp. 2d 219, 232 (D. Me. 2008) (noting that "the fact that a decision or agreement does not presently have prospective effect does not mean that it is irrelevant"); *see also Sudbury Pub. Sch. v. Mass. Dep't of Elementary & Secondary Edu.*, 762 F. Supp. 2d 254, 268-69 (D. Mass. 2010) (concluding that a hearing officer's decision that "did not address any rights that [the] [p]arents may have regarding [the] [s]tudent's prospective placement" was nevertheless an agreement for purposes of the stay put provision) (internal quotation omitted).

Portland also raises the fact that the hearing officer did not determine whether Aucocisco is the least restrictive environment for John, as required by the IDEA. Portland argues that an appropriate prospective placement must be a placement in the least restrictive environment, and that therefore, despite the hearing officer's conclusion that Aucocisco was proper for purposes of reimbursement, Aucocisco cannot be John's stay put placement.

It is true that, in the context of reimbursement, "[t]he question of whether a unilateral placement is 'proper' is 'viewed more favorably to the parent' than the question of whether 'the placement was required in order to provide a free appropriate public education.'" *York Sch. Dep't v. S.Z.*, 2015 WL 860953, *17 (D. Me. Feb. 27, 2015) (quoting *Rome Sch. Comm. v. Mrs. B.*, 247 F.3d 29, 33 n.5 (1st Cir. 2001)). The hearing officer acknowledged this, noting that "[a] parental placement may be appropriate even if it does not meet the standards that apply to an education provided by a school district." ECF No. 15-1 at 69 (citing MUSER § IV.4.G(3)).

While it is clear that a local education agency must provide a student an education in the least restrictive environment, a hearing officer is not required to make a least restrictive environment finding in order to agree to a private placement by the student's parents. Nothing in the IDEA or the corresponding federal and state regulations indicates that the State and the parents must agree to a placement in the least restrictive environment in order for that placement to be appropriate for stay put purposes. Portland offers no persuasive reason to read such a requirement into the statute. While a least restrictive environment finding is critical to the ultimate

FAPE determination, it is less crucial in the stay put context, where the goal is the preservation of the status quo during the pendency of judicial proceedings.

This conclusion is supported by the District of Massachusetts' decision in *Sudbury*, 762 F. Supp. 2d. In that case, the hearing officer specifically did not address the child's prospective placement, and instead found only that the parents were entitled to reimbursement for their past unilateral private placement—which, as noted above, requires a lower standard than a FAPE determination. *Id.* at 269. Nevertheless, the court found that the hearing officer's reimbursement order constituted an agreement as to the child's current educational placement for the purposes of the stay put provision. *Id.*

The court in *Sudbury* also addressed the Ninth Circuit's ruling in *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900 (9th Cir. 2009), which Portland relies on for its proposition that "a reimbursement order for a private placement by itself [is] insufficient to constitute a change of placement for purposes of the IDEA's stay put provision." ECF No. 16 at 5. The *Sudbury* court noted that in *Capistrano*, reimbursement was ordered by the district court only for a procedural violation, and that there had been no finding on the merits as to the appropriateness of the private placement. *Sudbury*, 762 F. Supp. 2d at 269. In the instant case—as in *Sudbury*—the hearing officer specifically found that Aucocisco "easily satisf[ies] the standard of being proper under the [IDEA]." ECF No. 15-1 at 71 (quotation omitted). Accordingly, I conclude that the Ninth Circuit's ruling in *Capistrano* is inapplicable to this case.

Because Aucocisco was the last placement that both the Does and the State agreed to, I conclude that Aucocisco is John's proper placement for purposes of the stay put provision of the IDEA, and that Portland is therefore required to fund John's education at Aucocisco throughout these judicial proceedings.

## V. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Enforce Maintenance of Placement (ECF No. 15) is **GRANTED**. Portland is **ORDERED** to fund John's private education at Aucocisco during the pendency of this judicial proceeding.

**SO ORDERED.**

**Dated: July 20, 2021**

                                                **/s/ Jon D. Levy**
                                      **CHIEF U.S. DISTRICT JUDGE**